## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

———————————————————————

|  |  |
|---|---|
| ASHLEY NEDRICK on behalf of<br>All similarly situated individuals | : |
|  | :   DOCKET NO: |
| Plaintiffs, | : |
| v. | :   **JURY TRIAL** |
| THE COUNTY OF SALEM,<br>JOHN S. CUZZUPE in his individual<br>and official capacities | : |
| JOHN DOES 1-50 | :   **CLASS ACTION COMPLAINT** |
| Defendant. | : |

———————————————————————

## INTRODUCTION

This is a class action complaint to vindicate the rights of individuals who were admitted to the Salem County Jail and classified as "at-risk". Salem County has a policy and practice to disregard the expectations of New Jersey law which requires a medical doctor to approve a suicide identification and prevention policy. Salem County's unlawful suicide identification and prevention policy creates atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. Detainees through the force of law are required to submit to routine strip searches after multiple strip searches prior to admission; being put in an anti-suicide smock which lacks fasteners; being caged in a cell 23.7-24.7; being caged in a cell 23.7-24.7 with unlawful electronic

1

surveillance.  Warden Cuzzupe's violation of the law is willful, wanton, reckless, and/or intentional.  Plaintiff and the Class have suffered emotional pain and suffering including their being "demeaned, dehumanized, humiliated, terrified, embarrassed, repulsed, and degraded"[1].  Plaintiffs seek class certification under F.R.C.P. 23 (b)(2) to enjoin Salem County's unlawful practices, to require accountability in the form of yearly submissions from its authorized health care providers and class certification under F.R.C.P. 23 (b)(3) for monetary damages.

## PARTIES

1.  Plaintiff Ashely Nedrick is a resident of Camden County New Jersey.

---

[1] ." Mary Beth G. v. City of Chicago, 723 F.2d 1263, 1272 (7th Cir. 1983)

2.   Defendant County of Salem (the "County") is a county government organized and existing under

the laws of the State of New Jersey.  At all times relevant hereto, the County, acting through the Salem County Correctional Facility and its personnel and the personnel of the County, was responsible for the policies, practices, supervision, implementation and conduct of all matters pertaining to the center and was responsible for the appointment, training, supervision and conduct of all personnel, including those working in the Salem County Correctional Facility.  In addition, at all relevant times, the County was responsible for enforcing the rules of the Correctional Facility and for ensuring that detention personnel obeyed the Constitution and laws of the United States and of the State of New Jersey.

3.   John Cuzzupe being sued in his individual and official capacity is the most senior employee/officer/official with ultimate hiring and firing authority and the ability to make policy of the Salem County Jail under  the oversight of the Salem County Board of Chosen Freeholders.

## CLASS ACTION ALLEGATIONS

4.   Plaintiff bring this action pursuant to F.R.C.P. 23 on behalf of Plaintiff and a class of similarly situated individuals who were detained in the Salem County Correctional Facility.

5.       The classes that Plaintiff seeks to represent are defined as follows:

All persons who were admitted or will be admitted to Salem County Jail's "at-risk" unit through the policy to identify/prevent suicides and subject to the "at-risk" policies and practices described herein. The Class Period

3

commences two years prior to the filing of the Complaint and and ends
when Salem County terminated its policies and practices as defined herein.

All female detainees who were admitted or will be admitted to Salem
County Jail's "at-risk" unit and housed in a B-6 cell. The Class Period
commences two years prior to the filing of the Complaint and ends when
Salem County terminated its policies and practices as defined herein.

6.      This action has been brought and may properly be maintained as a class and
satisfies the numerosity, commonality, typicality and adequacy requirements for maintaining
a class action.

7.      The members of the class are so numerous as to render joinder impracticable.
Upon information and belief, there have been hundreds or even thousands of detainees who
entered the Salem County Correctional Facility during the Class Period and were unlawfully
admitted to the "at-risk" unit.

8.      Upon information and belief, joinder of all of these individuals is
impracticable because of the large number of class members and the fact that class members
are likely dispersed over a large geographical area. Furthermore, upon information and
belief, many members of the class are low-income persons, may not speak English, and
likely would have great difficulty in pursuing their rights individually.

9.      Common questions of law and fact exist as to all members of the class,
including but not limited to:

a.  Did/Does Salem County have a policy and practice to strip search detainees
    contemporaneous to a body image scan?

b.  If so, is it unlawful to conduct routine strip searches of detainees contemporaneous to
    a body image scan?

c.  Did/Does Salem County have a suicide identification and prevention policy which is not approved by a medical doctor?

d.  If so, is it unlawful to have a suicide identification and prevention policy which is not approved by a medical doctor?

e.  If it is unlawful to have a suicide identification and prevention policy which is not approved by a medical doctor; do the consequences of an "at-risk" classification result in atypical and significant hardship upon the detainee in relation to the ordinary incidents of prison life?

f.  Did/Does Salem County have a policy and practice to routinely strip search those on the "at-risk" unit?

g.  If so, is it unlawful to conduct routine strip searches of detainees in a closed custody unit?

h.  Does Salem County have an electronic surveillance policy which monitors detainees who are not special risks?

i.  If so, is it unlawful to conduct electronic monitoring against detainees who are not special risks

j.  . Does Salem County have an electronic surveillance policy which broadcasts the monitoring of detainees to 15-20 locations throughout the Jail?

k.  If so, is it unlawful to have an electronic surveillance policy which broadcasts the monitoring of detainees to 15-20 locations throughout the Jail?

l.  Does Salem County have an electronic surveillance policy which permits cross-gender viewing?

m.  If so, is it unlawful to have an electronic surveillance policy which permits cross-

gender viewing?

n.  Does Salem County have a policy and practice where a medical doctor does not supervise those who are chemically dependent?

o.  If so, is it unlawful to have a policy and practice where a medical doctor does not supervise those who are chemically dependent?

10.     Plaintiff's claims are typical of the claims of the members of the class. Plaintiffs and all members of the class sustained damages arising out of Defendant's course of conduct.  The harms suffered by the Plaintiff are typical of the harms suffered by the class members.

11.     The representative Plaintiff has the requisite personal interest in the outcome of this action and will fairly and adequately protect the interests of the class.  Plaintiff has no interests that are adverse to the interests of the members of the class.

12.     Plaintiff has retained counsel who has substantial experience and success in the prosecution of class action and civil rights litigation.  The named Plaintiffs are being represented by William Riback, Esquire and Mark Kancher, Esquire

13.     Plaintiff's Counsel have the resources, expertise and experience to successfully prosecute this action against Salem County.  Counsel knows of no conflicts among members of the class, or between counsel and members of the class.

14.     This action, in part, seeks declaratory and injunctive relief.  As such, Plaintiffs seek class certification under F.R.C.P. 23 (b)(2), in that all class members were subject to the same policies and practices as identified above. In short, Salem County acted on grounds generally applicable to all class members.

15.     In addition Plaintiff seeks certification under F.R.C.P. 23 (b)(3).

16.     Common questions of law and fact exist as to all members of the class, and Predominate over any questions that affect only individual members of the class, as identified above.

17.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all of the individual members of the class is impracticable given the large number of class members and the fact that they are dispersed over a large geographical area.  Furthermore, the expense and burden of individual litigation would make it difficult or impossible for individual members of the class to redress the wrongs done to them.  The cost to the court system of adjudicating thousands of individual cases would be enormous.  Individualized litigation would also magnify the delay and expense to all parties and the court system.  By contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves the resources of the parties and the court system, and protects the rights of each member of the class.

18.     In the alternative to certification under F.R.C.P. 23, Plaintiffs also seek partial certification under F.R.C.P. 23.

## **FACTS**

**Facts Applicable to the Class Generally**

19. The United State Constitution Fourteenth Amendment, New Jersey Constitution Art. 1 ¶1 provide protection from the deviation of expectations created by state law when that deviation causes atypical conditions for the victim.

20. Plaintiff and the Class had an expectation that Salem County would have a suicide identification and prevention policy which is approved by a medical doctor.

21. Salem County's suicide identification and prevention policy is not approved by a medical

doctor.

22. Salem County's suicide identification and prevention policy causes atypical conditions of incarceration including:

    a.  Being subject to routine strip searches;

    b.  Being forced to wear an anti-suicide smock which is unusually short and lacks functional fasteners;

    c.  Being caged in a cell 23.7-24.7 where a camera broadcasts to 15-20 locations throughout the Jail;

    d.  Being caged in a cell 23.7-24.7 where a camera broadcasts to 15-20 locations throughout the Jail where the Jail permits cross-gender viewing;

    e.  Being denied medical supervision when upon admission the detainee is chemically dependent but not on prescription medication to treat such condution.

23. Plaintiff and the Class had an expectation that Salem County would have an electronic surveillance policy compliant with New Jersey law.

24. Salem County does not have an electronic surveillance policy compliant with New Jersey law in that:

    a.  It surveils detainees who are not special risk and;

    b.  Broadcasts to 15-20 locations throughout the jail.

25. Plaintiff and the Class had an expectation that Salem County would have a policy to address those who are admitted to the Salem County Jail who are chemically addicted.

26. The expectations of those who are admitted to the Salem County Jail, who are chemically dependent and not in possession of a prescription or prescription medication are violated

because Salem County has a cold turkey policy for these individuals.

27. The United State Constitution Fourth Amendment, New Jersey Constitution Art. 1 ¶7 and the New Jersey Strip Search Statute 2A:161A-1 et seq prohibit Salem County from having a policy and practice of conducting a body scan imaging contemporaneous to a strip search.

28. Salem County has a policy and practice of conducting a body scan imaging contemporaneous to a strip search.

29. The United State Constitution Fourth Amendment, New Jersey Constitution Art. 1 ¶7 and the New Jersey Strip Search Statute 2A:161A-1 et seq prohibit Salem County from conducting routine strip searches of detainees in a closed custody unit.

30. Salem County has a policy and practice to conduct routine strip searches of detainees in a closed custody unit.

31. Defendant Cuzzupe knows he was violating the rights of detainees by implementing policies practices or customs as identified above.

32.  The Defendant's written and/or *de facto* policy, practice and customs have been promulgated, effectuated and/or enforced in bad faith and contrary to clearly established law.

33. Pursuant to this written and/or *de facto* policy, each member of the class, including the named Plaintiffs had their rights violated.

34. As a direct and proximate result of the unconstitutional or illegal acts-- each member of the class, including the named Plaintiff -- was ""demeaned, dehumanized, treated with a lack of dignity, humiliated, terrified, embarrassed, [shamed] repulsed, degraded, and forced into submission . . . ."has suffered or will suffer from being demeaned, dehumanized, humiliated, terrified, embarrassed, repulsed, and degraded.

**Facts Applicable to the Named Plaintiff**

# ASHLEY NEDRICK

35. In or about June 2022 Plaintiff was admitted to the Salem County Jail.

36. Upon admission Plaintiff was simultaneously subject to a body image scan and a strip search.

37. Plaintiff was then detained in a cell alone.

38. Plaintiff was classified as "at-risk" without seeing a medical professional.

39. A CO escorted Plaintiff to the "at-risk" unit.

40. Plaintiff was directed to a shower room located in the "at-risk" unit.

41. Plaintiff was forced under color of law to submit to a strip search upon admission to the "at-risk" unit.

42. Plaintiff was forced to wear an anti-suicide smock.

43. The anti-suicide smock was uncomfortable, was too small,  lacked functional fasteners and was immodest.

44. Plaintiff was caged in a cell 23.7-24.7 only permitted into the "at-risk" unit.

45. Plaintiff's cell had a camera ("CCTV").

46. The CCTV live streamed to 15-20 locations throughout the Jail.

47. The CCTV retained footage for up to 100 days.

48. Cross-gender viewing is permissible.

49. Plaintiff was routinely strip searched because she was classified as "at-risk".

50. As a direct and proximate cause Plaintiff was ""demeaned, dehumanized, treated

with a lack of dignity, humiliated, terrified, embarrassed, [shamed] repulsed,

degraded, and forced into submission . . . ."

## CAUSES OF ACTION

### COUNT ONE
**FOURTH AMENDMENT VIOLATION OF REASONABLE EXPECTATIONS OF
PRIVACY FROM GOVERMENTAL INTRUSION; Violation of Article 1  Paragraph
Seven of the New Jersey Constitution/N.J.S.A. 2A:161A-1 et seq - Under Color of
State Law – Strip Searching Non-Indictable detainees.  Plaintiff's individual claim**

51. Plaintiff incorporates by reference and realleges each and every allegation stated in

paragraphs 1 through 50.

52. The United States Constitution Fourth Amendment and New Jersey Constitution

Art. 1 ¶7  protect against unreasonable governmental intrusions into privacy.  The

Fourth Amendment is applicable to the States through the Fourteenth

Amendment.

53. Salem County is a governmental entity to which the United States Constitution

and New Jersey Constitution applies.

54. Defendants violated the United States Constitution Fourth Amendment and New

Jersey Constitution Art. 1 ¶7 by and through the Salem County policy and practice

to subject detainees to a body image scanning device contemporaneous to a bend

and spread strip search.

55. It is well established that jails may not strip search a detainee after having already

been searched with no intervening opportunity to obtain contraband.

56. It is well established under the United States Constitution Fourth Amendment and

New Jersey Constitution Art. 1 ¶7[2]  that jails may not conduct routine strip

searches in a closed custody unit.

57. The New Jersey Strip Search statute provides more protection than the United

States Constitution Fourth Amendment.

58. Salem County and Warden Cuzzupe violate the United States Constitution Fourth

Amendment and New Jersey Constitution Art. 1 ¶7 by and through their policy to

conduct routine strip searches in a closed custody unit.

59. Warden Cazzupe knowingly and intentionally violates the violates the United

States Constitution Fourth Amendment, the New Jersey Constitution Art. 1 ¶7 and

New Jersey law.

60. Warden Cuzzupe's conduct is in willful and wanton disregard of his obligation to

treat detainees humanely.

61. Salem County's excessive strip search policy is conducted under color of state law.

62. Warden Cuzzupe's actions are conducted under color of state law.


63. Additionally, the placement of cameras in cells of detainees implicates the United

States Constitution Fourth Amendment and New Jersey Constitution Art. 1 ¶1

right to be free from unreasonable intrusion.

---

[2] The federal Constitution is a floor under which state law may not fall below.  The New Jersey Constitution of 1947 is designed to provide more protection than the federal constitution. The New Jersey strip search statute is interpreted to provide greater protection to detainees in a county detention facility than is afforded under the New Jersey Constitution.

64. Salem County's electronic surveillance policy which broadcasts the intimate details of detainees bodily acts and bodily functions is done under color of state law.

65.  Salem County's electronic surveillance policy which broadcasts the intimate details of detainees' bodily acts and bodily functions  done  under color of state law is unreasonable under the Fourth Amendment and Art. 1 ¶7.

66. This conduct on the part of Defendant represents violations of 42 U.S.C.A. 1983 and the pendent New Jersey Civil Rights Act N.J.S.A. 10:6-2.

67. Plaintiff through the force of law as a direct and proximate result of Defendants' unlawful conduct was "demeaned, dehumanized, treated in an undignified manner, humiliated, terrified, embarrassed, repulsed and was forced into complete submission with no ability to act volitionally.

## COUNT TWO

**UNITED STATES CONSTITUTION FOURTEENTH AMENDMENT
PROCEDURAL DUE PROCESS
NEW JERSEY CONSTITUTION ART. 1 ¶1
PROCEDURAL DUE PROCESS**

68. Plaintiff incorporates by reference and realleges each and every allegation stated in paragraphs 1 through 67.

69. Both the United States Constitution and the New Jersey Constitution provide Procedural Due process.

70. Procedural Due Process provides protection from deviation from expectations created by state law when that deviation causes atypical conditions for the victim.

71. New Jersey law creates expectation that detainees will treated humanely and with dignity.

**SUICIDE IDENTIFICATION AND PREVENTION POLICY**

72. New Jersey creates an expectation that detainees will only be classified as "at-risk through compliance with N.J.A.C. 10A:31-13.24.

73. New Jersey law N.J.A.C. 10A:31-13.24 provides

> **(a)** The adult county correctional facility Administrator or designee shall ensure that a written suicide prevention and intervention plan shall be developed that is reviewed and approved by a qualified medical or mental health professional.

> **(b)** This plan shall include provisions for training staff responsible for inmate supervision, as well as specific procedures for intake screening, identifying and supervising inmates who may be at risk for suicidal behavior.

74. Salem County and Warden Cazzupe know that its written suicide prevention and intervention plan was not developed, reviewed, nor approved by a qualified medical or mental health professional.

75. Plaintiff's expectation of being treated humanely was shattered by Defendants' unlawful policy and practice using a corrections' "at-risk" classification policy instead of one approved by a medical doctor.

76. The consequences of "at-risk" classification results in atypical and significant hardship in relation to the ordinary incidents of prison life including:

> a. Being required to wear an anti-suicide gown for days where the Velcro does not function;

> b. Being restricted to a cell 23/7-24/7

    c.  Being restricted to a cell 23/7-24/7 where a camera broadcasts and retains footage of everyday life activities

    d.  Being monitored with electronic surveillance

    e.  Being routinely strip searched.

77. Defendants willfully and wantonly refuse to comply with expectations which

N.J.A.C. 10A:31-13.24  creates.

## ELECTRONIC SURVEILLANCE

78. In addition, New Jersey law creates an expectation under N.J.A.C. 10A:31-8.13 that

detainees will be treated humanely and with dignity.  But, instead the victims are

treated as less than human for no apparent reason as described above.

79. New Jersey law creates an expectation that detainees will only be subject to

electronic surveillance in compliance with  N.J.A.C. 10A:31-8.13.

80. New Jersey law N.J.A.C. 10A:31-13.24 provides:

**a)** Observation through electronic surveillance systems may be used to observe *special risk inmates* and to observe inmates during movement and other activities and only when approved by the adult county correctional facility Administrator. Electronic surveillance shall not substitute for regular contact with staff members.

**(b)** Electronic surveillance should be utilized in such a manner as to *avoid interference with the privacy of inmates*, wherever possible.

81. Salem County and Warden Cazzupe knowingly and intentionally violate N.J.A.C.

10A:31-13.24

82. Consistent with Salem County's unlawful suicide identification and prevention

policy, there is no  evidence that Plaintiff was a *special risk inmate.*

83. Warden Cuzzupe knowingly and intelligently violates New Jersey law in a willful and wanton manner.

84. Salem County, by and through its Warden, do nothing to minimize the intrusion created by its electronic surveillance policy.

85. Instead, the victims' privacy is grossly invaded by Salem County's indiscriminately broadcasting  the feed to 15 to 20 locations throughout the jail.

86. Defendants have willfully and wantonly violated the expectations of New Jersey law.

87. Salem County's policies and practices concerning New Jersey's electronic surveillance policy is an atypical and significant deviation from normal jail policy.

88. Salem County's policies and practices are in violation of Procedural Due Process protected by the United States 14th Amendment and New Jersey Art. 1¶1.

## LACK OF MEDICAL SUPERVISION FOR CHEMICAL DEPENDENCY

89.  New Jersey law requires medical supervision of detainees who should be placed on a detoxification protocol.

> "Detoxification from alcohol, barbiturates and similar drugs, when not provided in a hospital or community detoxification center, shall be performed at the adult county correctional facility under medical supervision." N.J. Admin. Code § 10A:31-13.26

90. Cold turkey withdrawal is an atypical and significant deviation from normal jail policy.

91. Plaintiff through the force of law as a direct and proximate result of Defendants'

unlawful conduct was "demeaned, dehumanized, treated in an undignified manner, humiliated, terrified, embarrassed, repulsed and was forced into complete submission with no ability to act volitionally.

## Count III
## UNLAWFUL "AT-RISK" CLASSIFICATION
## New Jersey Civil Rights statute

92. Plaintiff includes paragraphs 1-91 as if set forth herein at length.

93. New Jersey law prohibit detainees from being classified as "at-risk" absent a suicide identification and prevention plan under the auspices of a medical doctor.

94. Salem County willfully and intentionally disregards its legal duty to comply with New Jersey law.

95. The unlawful classification policy and practice are done under color of state law.

96. Plaintiff sues under the New Jersey Civil Rights Act N.J.S.A. 10:6-2

97. Plaintiff through the force of law as a direct and proximate result of Defendants' unlawful conduct was "demeaned, dehumanized, treated in an undignified manner, humiliated, terrified, embarrassed, repulsed and was forced into complete submission with no ability to act volitionally.

## Count IV
## UNLAWFUL SURVEILLANCE
## New Jersey Civil Rights Act

98. Plaintiff includes paragraphs 1-97 as if set forth herein at length.

99. New Jersey law prohibits surveillance of detainees absent a special risk status.

100.     Salem County unlawfully designated Plaintiff as "at-risk" and as such were not entitled to surveil her.

101.     New Jersey law requires Salem County to minimize the intrusion of its electronic surveillance.

102.     Salem County is in willful and intentional violation of New Jersey law.

103.     The unlawful classification policy and practice are done under color of state law.

104.     Plaintiff sues under the New Jersey Civil Rights Act N.J.S.A. 10:6-2.

105.     Plaintiff through the force of law as a direct and proximate result of Defendants' unlawful conduct was "demeaned, dehumanized, treated in an undignified manner, humiliated, terrified, embarrassed, repulsed and was forced into complete submission with no ability to act volitionally.

## COUNT V
## FAILURE TO PROVIDE MEDICAL CARE
## United States Constitution 14th Amendment Cruel and Unusual Punishment and New Jersey Civil Rights Act predicated on N.J.A.C. 10A:31-13.26

106.     Plaintiff incorporates paragraphs 1-105 as if set forth herein at length.

107.     New Jersey law requires medical supervision of detainees who enter the facility and are chemically dependent.

108.        Salem County violates N.J.A.C. 10:31-13.26 by denying chemically dependent detainees medical supervision and appropriate medical care.

109.        Detainees suffer severe physical and emotional distress.


**Count VI**
**UNLAWFUL STRIP SEARCHES**
**New Jersey Civil Rights Act**

110.    Plaintiff includes paragraphs 1-109 as if set forth herein at length.

111.    The New Jersey strip search statute prohibits strip searching detainees after admission to an "at-risk" unit because the regulation only permits strip searches "prior to admission".

112.    Defendant and Salem County are in willful violation of New Jersey law.

113.    Plaintiff sues under the New Jersey Civil Rights Act N.J.S.A. 10:6-2.

114.    Plaintiff through the force of law as a direct and proximate result of Defendants' unlawful conduct was "demeaned, dehumanized, treated in an undignified manner, humiliated, terrified, embarrassed, repulsed and was forced into complete submission with no ability to act volitionally.

## Count VII
## New Jersey Law Against Discrimination
## Public Accommodation
## New Jersey Constitution Art. 1 ¶1 and New Jersey Civil Rights Act

115.    Plaintiff includes paragraphs 1-114 as if set forth herein at length.

116.    The Salem County Jail is a "Public Accommodation" as defined under law.

117.    Public Accommodation protections include the protection of female detainees from being subject to exposure of their naked bodies indiscriminately broadcast throughout the Jail, predominated by male staff.

118.    Defendants' actions are severe and pervasive.

119.    Plaintiff states a cause of action under the NJLAD

**120.**    Plaintiff through the force of law as a direct and proximate result of Defendants' unlawful conduct was "demeaned, dehumanized, treated in an undignified manner, humiliated, terrified, embarrassed, repulsed and was forced into complete submission with no ability to act volitionally.

## Count VII
## New Jersey Law Against Discrimination
## Public Accommodation
## New Jersey Constitution Art. 1 ¶1 and New Jersey Civil Rights Act

121.    Plaintiff includes paragraphs 1-120 as if set forth herein at length.

122.    The NJLAD and New Jersey Constitution Art. 1 ¶1 protect persons with disabilities.

123.    Chemical dependency is a disability.

124.              Defendant is obligated to treat persons with disabilities.

      125.    Detainees suffer severe physical and emotional distress as a result of Defendants'' discrimination.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff request that this Court grant them the following relief:

- A judgment against Defendant awarding compensatory damages for all damages cognizable under law including pre- and post judgement interest

- Punitive damages against the Salem County for its willful and intentional violation of the NJLAD.

- Punitive damages against the individual defendant Warden John S. Cuppuze for his willful and wanton conduct;

- A declaratory judgment against Defendant declaring Salem County's policies, practices and customs to be unconstitutional and/or violations of their rights.

- A preliminary and permanent injunction enjoining Salem County from continuing the unconstitutional/illegal policies, practices and customs to be unconstitutional and/or violations of their rights including appointment of medical Trustees.

- A monetary award for attorney's fees and the costs of this action. All other relief which is just and proper.

## JURY TRIAL

Plaintiffs demand a jury as to all issues.

Respectfully submitted

*s/William Riback 013581994*
WILLIAM RIBACK, LLC
William Riback, Esquire  013581994
1101 N. Kings Highway, Suite 210
Cherry Hill, NJ 08034
856/857-0008

Mark Kancher, Esquire 280291972
1101 N. Kings Hwy, Suite 210
Cherry Hill, NJ 08034
856.795.2440
Mark@Kancherlaw.com