UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ASHLEY NEDRICK, on behalf of all : 
similarly situated individuals :
 :
        Plaintiffs, : Civ. No. 22-5143 (RBK) (EAP)
 :
v. :
 :
COUNTY OF SALEM, et al., : **OPINION**
 :
        Defendants. :
 :

**ROBERT B. KUGLER, U.S.D.J.**

**I.    INTRODUCTION**

Plaintiff, Ashley Nedrick, ("Plaintiff" or "Nedrick"), is suing on behalf of similarly situated individuals with an amended civil complaint. (*See* ECF 3). Presently pending before this Court is Defendants', the County of Salem's and John S. Cuzzupe's (collectively the "Defendants"), motion to dismiss the amended complaint in its entirety with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (*See* ECF 8). For the following reasons, Defendants' motion to dismiss is granted in part.

**II.    FACTUAL AND PROCEDURAL BACKGROUND**

In June, 2022, Plaintiff was admitted to the Salem County Jail. (*See* ECF 3 ¶ 35). Upon admission she was subjected to a body scan and strip search. (*See id.* ¶ 36). Plaintiff was then classified as "at risk" and escorted to the "at risk" unit. (*See id.* ¶¶ 38-39). She was forced to wear an anti-suicide smock which she claims was immodest, uncomfortable, too small, and lacked functional fasteners. (*See id.* ¶ 42). She in a cell (23.7-24.7) that live streamed to 15-20 locations throughout the jail. (*See id.* ¶¶ 45-46). Plaintiff was routinely strip searched because she was classified as "at-risk." (*See id.* ¶ 49).

Plaintiff argues her (and similarly situated members) federal and state constitutional rights as well as her rights under state law were violated by the Defendants, the County of Salem, and John Cuzzupe. Plaintiff states Cuzzupe is the most senior employee at the Salem County Jail. She claims the following facts are applicable to the class generally:

1. Being subject to routine strip searches;
2. Being forced to wear an anti-suicide smock which is usually short and lacks functional fasteners;
3. Being caged in a cell 23.7-24.7 where a camera broadcasts to 15-20 locations throughout the jail;
4. Being caged in a cell 23.7-24.7 where a camera broadcasts to 15-20 locations throughout the Jail where the Jail permits cross-gender viewing;
5. Being denied medical supervision when the detainee is chemically dependent but not on prescription medication to treat such a condition.

(*See id.* ¶ 22).

Plaintiff raises the following counts in the amended complaint:

1. Fourth Amendment/State Constitutional Claim for strip searching non-indictable detainees ("Count One");
2. Fourth Amendment/Procedural Due Process Violations related to: (a) suicide identification and prevention policy; (b) electronic surveillance; and (c) lack of medical supervision for chemical dependency ("Count Two");
3. Unlawful "at-risk" classification ("Count Three");
4. Unlawful surveillance ("Count Four");
5. Failure to provide medical care ("Count Five");

6. Unlawful strip searches ("Count Six");

7. Violation of New Jersey's Law Against Public Accommodation and the New Jersey Civil Rights Act ("NJCRA") related to female detainees being subject to exposure of their naked bodies ("Count Seven");

8. New Jersey Law Against Discrimination/Public Accommodation related to failing to protect Plaintiff for her chemical dependency disability ("Count Eight")[1];

9. Federal/State constitutional violations as well as violations of the NJCRA and New Jersey Law Against Discrimination for providing insufficient clothing ("Count Nine")[2];

10. Federal/State constitutional violations as well as violations of the NJCRA and New Jersey Law Against Discrimination for lack of medical care and supervision ("Count Ten" and Count Eleven")[3].

Defendants have filed a motion to dismiss the amended complaint in its entirety. (*See* ECF 8). Plaintiff opposes Defendants' motion. (*See* ECF 10). Defendants then filed a reply brief in support of their motion. (*See* ECF 11).

### III.   LEGAL STANDARDS

A. <u>Rule 12(b)(1) Standard</u>

A defendant may move to dismiss a complaint for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1) by challenging jurisdiction facially or factually. *See Constitution Party of Pennsylvania v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014). A facial challenge to subject-matter jurisdiction "considers a claim on its face and asserts that it is insufficient to

---

[1] Mislabeled in the amended complaint as a second Count Seven.

[2] Mislabeled in the amended complaint as Count Ten.

[3] Mislabeled in the amended complaint as Counts Eleven and Twelve.

invoke the subject-matter jurisdiction of the court because, for example, it does not present a question of federal law[.]" *Id.* at 358. In contrast, a factual challenge "is an argument that there is no subject matter jurisdiction because the facts of the case . . . do not support the asserted jurisdiction." *Id.* Drawing this distinction is important because it "determines how the pleading must be reviewed." *Id.* at 357–58 (citing *In re Schering Plough Corp. Intron*, 678 F.3d 235, 243 (3d Cir. 2012)). In analyzing a facial challenge, "the court must only consider the allegations of the complaint and documents referenced therein and attached thereto[.]" *Constitution Party of Pennsylvania*, 757 F.3d at 358 (citing *In re Schering Plough Corp. Intron*, 678 F.3d at 243). Whereas in considering a factual challenge to subject-matter jurisdiction, the court "may look beyond the pleadings to ascertain the facts." *Id*. Furthermore, in considering a factual challenge to subject matter jurisdiction, "the plaintiff's allegations enjoy no presumption of truthfulness, and [the plaintiff] bears the burden of establishing jurisdiction." *Meehan v. Taylor*, No. 12–4079, 2013 WL 4517943, at *2 (D.N.J. Aug. 26, 2013) (citing *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008); *Mortensen v. First Fed. Sav. Loan Ass'n.*, 549 F.2d 884, 891 (3d Cir. 1977)).

    A.  <u>Rule 12(b)(6) Standard</u>

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which relief can be granted. When evaluating a motion to dismiss under Rule 12(b)(6), "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). In other words, a complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to

"state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Iqbal*, 556 U.S. at 678. This "plausibility standard" requires that the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is 'not akin to a probability requirement.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pleaded; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). However, courts are "not compelled to accept 'unsupported conclusions and unwarranted inferences,'" *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (quoting *Schuylkill Energy Res. Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997)), nor "a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

A court conducts a three-part analysis in analyzing a motion to dismiss pursuant to Rule 12(b)(6). *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675). Second, the court should identify allegations that, "because they are no more than

conclusions, are not entitled to the assumption of truth." *Id.* at 131 (quoting *Iqbal*, 556 U.S. at 680). Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.*

**IV.    DISCUSSION**

Defendants make two primary arguments in their motion; namely that Plaintiff has failed to adequately state a claim and that the amended complaint should be dismissed because it is a matter that is predominantly addressed by New Jersey Law. Each of these arguments are considered in turn.

A. <u>Failure to State a Claim</u>

To reiterate Plaintiff's amended complaint asserts she (and others similarly situated) were forced into atypical conditions of confinement due to being subject to routine strip searches, the conditions of their confinement and a lack of medical supervision. At the outset, this Court notes that Defendants' brief primarily focuses on Plaintiff's strip search and lack of medical supervision claims brought in the amended complaint. Thus, it is not surprising that Defendants claim in their brief that Plaintiff seeks to certify only two classes. However, Defendants do not discuss what this Court construes as other potential classes raised in the amended complaint. For example, the Defendants brief is relatively silent regarding certain aspects of Plaintiff's conditions of confinement claim, such as the clothing she was provided. Accordingly, this Court's analysis will focus primarily on whether Plaintiff's strip search and medical supervision claims sufficiently state a claim.

i.    *Strip Searches*

The amended complaint states that Plaintiff was strip searched upon arrival at Salem County Jail and has been subject to routine strip searches because she is "at-risk." According to

Defendants though, she cannot establish a violation of her federal rights on the claims related to the strip searches.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons ... against unreasonable searches and seizures." U.S. Const. amend. IV. Reasonableness "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). In *Florence v. Board of Chosen Freeholders of County of Burlington*, 566 U.S. 318, 339 (2012). the United States Supreme Court held that an institution's policy of subjecting every incoming detainee who would enter general population to a strip search, regardless of whether there was reasonable suspicion that the detainee may be in possession of contraband, drugs, or weapons, did not violate the Fourth Amendment. Emphasizing the serious health and safety concerns that inmates and officers face in potentially allowing contraband or undetected disease into prisons, the Supreme Court found that the policies at issue were constitutional because they were necessary to meet the needs of the institution. *Id.* at 341 (Alito, J., concurring). Furthermore, "courts must defer to the judgment of correctional officials unless the record contains substantial evidence showing their policies are an unnecessary or unjustified response to problems of jail security." *Id.* at 322–23.

Applying *Florence*, however, the United States Court of Appeals for the Third Circuit has since held a search policy to be unconstitutional where inmates were required to submit their anal and genital regions to visual inspection three times a day, regardless of whether they had been contact with others. *See Parkell v. Danberg*, 833 F.3d 313, 327 (3d Cir. 2016). Unlike in *Bell*, the court reasoned, there was not even a low probability an inmate would obtain contraband; it was "virtually impossible." *Id.* at 328.

While somewhat sparse, Plaintiff alleges not only a strip search upon entry to Salem County Jail, one presumably permitted based on *Florence*, but also alleges constant surveillance and then still being subject to subsequent routine strip searches. At this early stage of the litigation, based on these allegations, Plaintiff has at least stated a claim to permit more factual development of this claim during discovery. Plaintiff's claims related to the strip searches shall proceed.

    ii.    *Medical Supervision*

As detailed above, Plaintiff's claims related to a lack of medical supervision are to her argument that chemically dependent detainees are denied medical supervision upon admission at Salem County Jail. (*See* ECF 3 ¶ 22(e). Plaintiff's claims for deliberate indifference to her serious medical needs are analyzed under the Fourteenth Amendment as Plaintiff was a detainee. *See Tapp v. Brazill*, 645 F. App'x 141, 145 n.4 (3d Cir. 2016). To allege a Fourteenth Amendment violation, a detainee must allege that his conditions amounted to punishment. *See Bell*, 441 U.S. at 538. Punishment has both a subjective and an objective component – the objective component asks whether the deprivation was sufficiently serious and the subjective component asks whether the defendant acted with a sufficiently culpable state of mind. *See Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). While the Fourteenth Amendment controls this claim, the Eighth Amendment's "deliberate indifference" standard provides a guide to what, at a minimum, is owed to pretrial detainees. *See Tapp*, 645 F. App'x at 145 n.4 (citing *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581-82 (3d Cir. 2003)); *see also Reavis v. Hicks*, No. 19-21711, 2020 WL 3034619, at *3 (D.N.J. June 5, 2020) (citation omitted).

> For the delay or denial of medical care to rise to a violation of the Eighth Amendment's prohibition against cruel and unusual punishment, a prisoner must demonstrate "(1) that defendants were deliberately indifferent to [his] medical needs and (2) that those

8

> needs were serious." *Rouse v. Plantier,* 182 F.3d 192, 197 (3d Cir. 1999). Deliberate indifference requires proof that the official "knows of and disregards an excessive risk to inmate health or safety." *Natale v. Camden Cnty. Corr. Facility,* 318 F.3d 575, 582 (3d Cir. 2003) (quoting *Farmer v. Brennan,* 511 U.S. 825, 837 (1994)). We have found deliberate indifference where a prison official: "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a nonmedical reason; or (3) prevents a prisoner from receiving needed or recommended treatment." *Rouse,* 182 F.3d at 197. Deference is given to prison medical authorities in the diagnosis and treatment of patients, and courts "disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment . . . (which) remains a question of sound professional judgment." *Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979) (quoting *Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir. 1977)). Allegations of negligent treatment or medical malpractice do not trigger constitutional protections. *Estelle v. Gamble,* 429 U.S. 97, 105-06 (1976).

*Pierce v. Pitkins,* 520 F. App'x 64, 66 (3d Cir. 2013). Deliberate indifference can also be found "where the prison official persists in a course of treatment in the face of resultant pain and risk of permanent injury." *See McCluskey v. Vincent,* 505 F. App'x 199, 202 (3d Cir. 2012) (internal quotation marks and citation omitted). "A medical need is serious if it 'has been diagnosed by a physician as requiring treatment,' or if it 'is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" *See Mitchell v. Beard,* 492 F. App'x 230, 236 (3d Cir. 2012) (*quoting Atkinson v. Taylor*, 316 F.3d 257, 272-73 (3d Cir. 2003) (quoting *Monmouth Cnty. Inst. Inmates v. Lanzaro,* 834 F.2d 326, 347 (3d Cir. 1987))). Plaintiff's medical supervision claims under the NJCRA are similarly analyzed. *See Bayette v. Ricci*, 489 F. App'x 540, 543 n. 2 (3d Cir. 2012) (utilizing same analysis for NJCRA and Section 1983 denial of medical care claims "because the test for cruel and unusual punishment under the New Jersey state Constitution 'is generally the same as that applied under the federal Constitution.'") (citation omitted).

Defendants assert Plaintiff fails to establish a claim related to medical supervision because she does not allege she is chemically dependent or has a medical disability. Plaintiff concedes this point factually in her opposition brief but maintains these claims should remain because she is typical of the class she represents. (*See* ECF 10 at 21). Defendants though, disagree and analogize that permitting Plaintiff to serve as the class representative in this case would be similar "to allowing Plaintiff to be a representative of someone who slipped and fell when Plaintiff never slipped and fell." (ECF 11 at 7-8).

This Court agrees with Defendants. Plaintiff bases her claim of inadequate medical care and supervision because the Salem County Jail is not properly treating those with chemical dependencies and/or those who are developmentally disabled. However, she then concedes she possesses none of those traits. Accordingly, assuming such traits constitute a "serious medical need," Plaintiff admits she does not have a "serious medical need" that the Defendants are mistreating. As such, dismissal of Plaintiff's claims related to the lack of adequate medical care treatment is proper because Plaintiff has not alleged she has a serious medical need. This dismissal though will be without prejudice.

B. <u>Matter Predominantly Addressed by New Jersey Law</u>

Finally, Defendants argue that the entire amended complaint should be dismissed because this matter is predominantly addressed by New Jersey law. As noted above, however, portions of the amended complaint implicate federal constitutional protections. Furthermore, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's state law claims. Thus, this argument by Defendants is rejected.

V.     CONCLUSION

For the foregoing reasons, Defendants motion to dismiss Plaintiff's amended complaint is granted in part. Plaintiff's claims related to a lack of medical supervision/care, which this Court interprets to be Counts Five, Eight, and Ten in their entirety and portions of Counts Two and Eleven are dismissed without prejudice. An appropriate order will be entered.


DATED: June 27, 2023                                s/ Robert B. Kugler
                                                    ROBERT B. KUGLER
                                                    United States District Judge